hDECUIR, J.,
dissenting.
Disregarding, as we must, the credibility problems rampant throughout the record before us, I believe that the facts point strongly and overwhelmingly in the plaintiffs’ favor, sufficient to warrant the granting of a JNOV after the jury found that Dr. Raggio had not violated the standard of care applicable to neurosurgeons in his care of Janis Hyatt. Accordingly, I dissent from the majority’s reversal of the JNOV granted by the trial court.
Mrs. Hyatt has suffered a catastrophic brain injury. She is bedridden and unable to communicate, walk, eat normally, or attend to any of her personal needs. All of this may have been avoided had she been properly and timely diagnosed. It is uncontradicted that the CT scan, the test relied upon by Dr. Raggio to diagnose Mrs. Hyatt, could not completely rule out an aneurysm. Conversely, a lumbar pune- *783 ture would have detected the aneurysm and is a simple, inexpensive, and low risk procedure. It would have shown the very dangerous condition to which Mrs. Hyatt’s symptoms, as recorded by the emergency room nurse, correlated. In my view, Dr. Raggio breached the applicable standard of care by failing to perform this simple test. [ s>The broad protections afforded the medical community by the malpractice laws cannot stretch so far as to include the blatant disregard for this patient’s condition by one who professes to have a particular interest in the very disease Mrs. Hyatt exhibited.
I reach this conclusion without weighing the diametrically opposed testimony of Mr. Hyatt and Dr. Raggio, both of whom related conversations that were neither documented nor corroborated. Rather, I believe the facts as shown in the medical records support the trial court’s ruling. Based on facts, not self-serving testimony, the trial court judge did exactly the right thing. The decision of this court, from which I dissent, serves only to compound Mrs. Hyatt’s tragic experience.